181009dpC                        Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ----------------------------x

3    D.P., *an infant, by His Mother*
     *and Natural Guardian, L.P.,*
4
                    Plaintiff,
5
                    v.                        18 CV 5758 CS
6
     JUUL LABS, INC.,
7
                    Defendant.
8
     ----------------------------x
9                                        United States Courthouse
                                         White Plains, N.Y.
10                                       October 9, 2018
                                         3:30 p.m.
11
     Before:
12
                       THE HONORABLE CATHY SEIBEL,
13
                                               District Judge
14
                            APPEARANCES
15
     GISKAN SOLOTAROFF & ANDERSON, LLP
16        Attorney for Plaintiff D.P.
     AMY ROBINSON
17   JASON SOLOTAROFF

18   GIBSON DUNN & CRUTCHER, LLP
          Attorney for Defendant JUUL Labs, Inc.
19   JOSEPH EVALL
     AUSTIN SCHWING
20   DECLAN CONROY

21

22

23

24

25

181009dpC                     Conference

1            (In open court; case called)

2            THE COURT:  Mr. Solotaroff and Ms. Robinson.

3            And Mr. Evall, Mr. Schwing, and Mr. Conroy.

4            Everyone can have a seat.

5            I have Mr. Evall's September 18th letter, and his

6     September 19th letter.  And I have Mr. Solotaroff's October

7     2nd letters.

8            One thing I'll want your opinions on is whether you

9     want to brief both of these at the same time, both the transfer

10    and the 12(b)(6), or if you want to do the transfer first.

11           With respect to the 12(b)(6) motion, I'm going to do

12    what I always do, which is give the plaintiff the opportunity

13    to amend now that it has seen what the arguments, in broad

14    strokes, are going to be.  I do that because I don't want to

15    have to grant a motion, then give leave to amend, and then have

16    another motion.  But I also will, in all likelihood, will not

17    allow another amendment on the same issues.

18           But just, first, on the transfer issue, I understand

19    that the plaintiff would be in the class in California if it

20    were certified, but the way I read it, and you'll correct me if

21    I'm wrong, is that the claims are not the same.

22           The California case looks to be more like a false

23    advertising, misleading, misrepresentation -- you know, I guess

24    their equivalent of a GBL 349 claim.  And here, it's more of a

25    design defect claim.

181009dpC                    Conference

1          Am I wrong about that?  Are the same claims in both

2     cases?

3          MR. SCHWING:  Yes, your Honor.  Austin Schwing.  That

4     is different than our opinion, your Honor.  I believe, that's

5     incorrect.  It may have been that you looked at the original

6     complaint that was filed --

7          THE COURT:  Oh, that could be.

8          MR. SCHWING:  -- in the Colgate action, which was, as

9     your Honor described, there is a first amended complaint.

10         THE COURT:  I think I actually didn't look at the

11    complaint itself.  I looked at what you guys said in your

12    letters about the complaint.

13         MR. SCHWING:  It may be my fault for not adequately

14    explaining it to your Honor.

15         THE COURT:  I meant "you guys" collectively.

16         MR. SCHWING:  The first amended complaint in the

17    Colgate action is document number 24, and in fact, there are

18    allegations of failure to warn, there are allegations of design

19    defect, allegations of manufacturing defect.

20         The overarching allegations in the complaint are that

21    there are also, as your Honor pointed out, allegations about

22    false advertising.  It is a long laundry list of claims at

23    issue in that case, there are 11 causes of action, but the

24    heart of this case, and what we're here to talk about, is

25    encompassed within the Colgate nationwide class action.

181009dpC                    Conference

1          And there are allegations in the Colgate action, just

2     as here, that JUUL was marketing and selling addictive products

3     and didn't make adequate disclosure.  So there really is a

4     substantial overlap between the Colgate case and this case.

5          There is one additional negligence-based cause of

6     action in this case, but as your Honor has seen from our

7     letters, and we would like to brief further, there is no

8     requirement of identical overlap for there to be a transfer

9     under the first-filed rule under Section 1404, the transfer

10    rule, but these cases are very similar to one another.

11          THE COURT:  The defense said in its letter that the

12    lawyers are the same on the plaintiff's side.

13          MR. SCHWING:  That's correct.

14          THE COURT:  And that you named a law firm that has not

15    appeared in this case.

16          MR. SCHWING:  Under the Migliaccio & Rathod firm,

17    which is listed on the complaint here -- they may not have

18    filed their notice of appearance yet, your Honor, but

19    Esfand Nafisi who signed on the pleadings here is counsel.

20          THE COURT:  I see.

21          MR. SCHWING:  And that firm is counsel not only in the

22    Colgate action, which was the first-filed Northern District of

23    California action; they then, about a month later, filed

24    another California Superior Court action, and they're involved

25    there.  This is now the third lawsuit filed by Migliaccio &

181009dpC                    Conference

1  Rathod.

2        Counsel here today is not involved in those other

3  cases; however, there is overlapping counsel in all three of

4  the cases pending against JUUL Labs.

5        THE COURT:  Well, I hope this individual, if he's

6  working with you, Mr. Solotaroff, doesn't think that by not

7  filing an appearance, that's going to make a difference.  He

8  might as well file an appearance if he's working on the case.

9        MR. SOLOTAROFF:  He's not working on this case.

10        THE COURT:  Well, his name is on the complaint.

11        MR. SOLOTAROFF:  There was some thought that he might

12  be, but there's a reason why that firm hasn't put a notice in.

13  And if we're going to amend the complaint, they're going to

14  come off.

15        But to be extremely candid, I understand the motion to

16  dismiss.  We're in a little bit of uncharted territory here

17  with our allegations.  There haven't been products liability

18  cases exactly like this before.  And I think the defendants

19  have a well-found -- an arguable motion to dismiss.  I don't

20  think you should talk them out of making their motion to

21  dismiss because I think it's a real motion.  And I'm looking

22  forward to responding to it.  I do want to talk a little bit

23  more about that in a second.

24        The motion to transfer, Judge, is simply ridiculous.

25  I've never heard of something like that.  I mean, it would be

181009dpC                    Conference

1    one thing if the case was MDL'd, then that would make sense.

2    Then if there are a lot of these cases filed, and there's an

3    MDL, and it gets consolidated for discovery and pretrial

4    proceedings somewhere, fine, but really?  We're going to make

5    this family try this case in San Francisco?

6              And the crazy thing, of course, Judge, is that the

7    defendants are telling the San Francisco Court that it

8    shouldn't be a nationwide class action and that it's

9    unmanageable.  So, if the defendants have their way, this case

10   will be sitting out there in California for absolutely no

11   reason.

12             To the extent that we need to coordinate discovery, we

13   certainly can do that, even though the cases are pending in

14   different courts.

15             THE COURT:  The defendants came up with one case in

16   their letter, and maybe there are more and they just didn't put

17   it in their letter.  It was a Judge Kram case, so that will

18   tell you how old it was, 2002, where individuals who had opted

19   out of a class action, she nevertheless sent their claims back

20   to the original court.

21             MR. SOLOTAROFF:  Can I distinguish that?

22             MR. SCHWING:  Several more --

23             THE COURT:  My question is really for Mr. Schwing.

24             Is that the best you can do?

25             MR. SCHWING:  I respect the brevity that we're

181009dpC                    Conference

1  required to use with our letters, but unfortunately, it takes

2  away from our ability to cite multiple cases on the same issue.

3  There are many cases in the context of people who have opted

4  out of class actions being transferred.  We gave a cite to one.

5  I'm happy to cite right now to several more.

6          THE COURT:  I believe you.  I wonder sometimes if you

7  look and say, Wow, if I have to go back that far, maybe this

8  doesn't happen very often.

9          MR. SCHWING:  The first-filed rule applies in this

10 situation.

11         THE COURT:  It's almost always applied when it's the

12 same parties, right?

13         MR. SCHWING:  It only has to be the same or

14 substantially similar parties.  There's no requirement that it

15 be identical.  Here, the plaintiff would fall under the

16 proposed class, which, by the way, includes New Yorkers and

17 also minor New Yorkers.

18         Now, the plaintiff here could opt out of the case, but

19 the bottom line is that Judge Orrick is going to be looking at

20 virtually all of the causes of action that are at issue here

21 and will be making determinations; we'll be having depositions;

22 and if we go to trial, trial testimony from witnesses

23 addressing the very issues that would be before your Honor.

24         It simply is inefficient to go forward in two

25 different lawsuits over the same exact issue.  There is no

181009dpC                    Conference

 1   reason that Judge Orrick can't decide those issues.

 2         THE COURT:  I'm sure he is completely capable of

 3   deciding them, but the plaintiff has a choice of forum.  And

 4   it's not gamesmanship.  Most of the time when I've applied the

 5   first-filed rule, it's because somebody is playing games.  I

 6   don't see that here, I don't think, although I do wonder why

 7   that lawyer was fading into the woodwork if he was on the

 8   complaint.

 9         But wouldn't it make just as much sense to coordinate

10   the discovery of the defendant with the California case, but to

11   let the case stay here because the plaintiff and the

12   plaintiff's witnesses and doctors and teachers and all of that

13   are here?

14         MR. SCHWING:  Your Honor, that would be better than

15   nothing.  But to put it bluntly, I think we can do better and

16   should do better, which would be to transfer the case to the

17   Northern District of California.

18         THE COURT:  It's always an appealing argument to make

19   to a district judge and tell her that you can get rid of a

20   case.

21         MR. SCHWING:  What we're looking to do here is not

22   have duplicative, inefficient litigation.  And there's

23   virtually the same causes of action that the plaintiff here is

24   raising that are being raised in the Northern District of

25   California, as well.  We're really looking at a copycat

181009dpC                    Conference

1   situation.

2          And in terms of gamesmanship, I'm loath to accuse

3   anybody of anything, but what we've seen here is, first, the

4   Northern District of California case gets filed by these by

5   this group of plaintiff's lawyers.  Then we have a follow-on

6   California Superior Court -- California-only class action filed

7   by the same plaintiff's lawyers.  And the only reason they did

8   that was because they didn't want somebody else to sort of peek

9   into the courthouse and try to avoid jurisdiction, so they

10  filed a California-only class against JUUL, which is completely

11  duplicative of the nationwide class action.  That case has now

12  been stayed by Judge Karnow precisely because it would be

13  inefficient to go forward with both of the cases because they

14  address the same issues.  And now here we have the third case.

15         We're not looking to put out the plaintiff,

16  inconvenience the plaintiff in any way.  We're happy to do the

17  depositions here.  To the extent that the case actually goes to

18  trial and your Honor, of course, knows the statistics on cases

19  going to trial.  It's something less than 1 percent or

20  something.  But if there's a possibility of it, we would be

21  willing to fly out the plaintiff here and the plaintiff's

22  parents so that we can reasonably accommodate their need.

23  We're not looking to in any way burden anybody financially.

24         What we're looking to do is to achieve efficiency, and

25  we're looking to not have witnesses have to provide testimony

181009dpC                    Conference

1  multiple times.  We're looking to not burden two different

2  district courts with the exact same issues.  And I do believe

3  that the most efficient way to treat this case, and, again,

4  there is a presumption under the first-filed rule, which does

5  apply here, I'm happy to cite additional cases to your Honor,

6  that the case should be transferred.

7          THE COURT:  Are there others besides the three you've

8  mentioned?

9          MR. SCHWING:  The three --

10         THE COURT:  I mean, these kind of lawsuits tend to be

11 infectious.

12         MR. SCHWING:  Thank you for bringing that up.  I

13 neglected to mention there was another case that was recently

14 filed in the Eastern District of Pennsylvania.  Now, the day

15 before that case got filed, and to our shock, it wasn't the

16 same plaintiff's lawyer this time, a new plaintiff's firm, but

17 the day before that case got filed, Judge Orrick named the

18 plaintiff's lawyers in the Colgate action, named them interim

19 class counsel.  And the next day, we got this case filed in the

20 Eastern District of Pennsylvania.

21         This week, we are going to file a motion to transfer

22 that case because there, they're trying to bring a class on

23 behalf of Pennsylvania citizens and New Jersey citizens, but we

24 already have interim class counsel for the entire purported

25 nationwide class for the Northern District of California.  It

181009dpC                    Conference

1   wouldn't be a shock if we continue have to additional lawsuits

2   filed.

3          THE COURT:  At some point, it may be an MDL.

4          MR. SCHWING:  It may be, but for now, we are taking it

5   as it comes, and we want to create an efficient process.  We're

6   not looking to have duplicative litigation.  And we believe it

7   should be transferred to Judge Orrick.  And we'd be happy to

8   provide additional case law in our briefing on the issue.

9          Your Honor mentioned the issue of how do we want to

10  structure this in terms of scheduling?

11         From our viewpoint, if the case were to be

12  transferred, I think it would make more sense to brief the

13  motion to dismiss before Judge Orrick, to have some deadlines

14  that he would set forth.  He's very active.  We've already been

15  before him twice in case management conferences.

16         So what we would propose is that we brief the motion

17  to transfer and we get a decision on that.  And if the case is

18  transferred, then we would have a case management conference

19  with Judge Orrick to decide how the cases should best proceed,

20  including a motion the dismiss.  And if the case stays with

21  your Honor, we, of course, would be happy to file a motion to

22  dismiss that plaintiff's counsel has indicated is worthy of

23  bringing.

24         MR. SOLOTAROFF:  Judge, I mean, again, it's one

25  thing -- the case in California isn't even certified, right?

181009dpC                    Conference

1  So that's one thing, right?

2        Let's just imagine what is going to happen.  I think

3  your Honor is right, we should coordinate discovery, and that's

4  where the overlap is going to be, because as unlikely it is for

5  D.P.'s case to be tried, it is a gazillion times less likely

6  for the class action to be tried.

7        So, Judge Orrick is basically going to be managing

8  discovery in a case where nobody thinks New York law should be

9  applied.  The plaintiffs in that case think that California law

10  should be applied.  And defendants here think that possibly New

11  York law should be applied, but that it's so unmanageable

12  because of all 50 states, that there shouldn't be a nationwide

13  class action.

14        So what we really run the risk here of is, if your

15  Honor transfers the case to California and the defendants

16  prevail with Judge Orrick, there's not going to be a nationwide

17  class action, and D.P.'s case is going to be stuck out there

18  for really no reason.

19        THE COURT:  What do you think we should do in terms of

20  briefing?  Should we do the two motions seriatim or do you want

21  to brief them both at once?

22        MR. SOLOTAROFF:  I don't know if this enters into the

23  calculation, but in terms of my ability to amend, in all

24  honesty, Judge, I don't think I have enough from the defendants

25  yet to really fairly address all of the alleged, what they will

181009dpC                    Conference

1    claim, are alleged deficiencies in the complaint.

2           And I know that other judges in this court do this, is

3    that rather than make me amend based on the pre-motion letter,

4    I think you should let me amend after I see their brief but

5    before I file my own, and before your Honor has to deal with

6    it.

7           THE COURT:  What are you going to learn from their

8    brief that will help you amend?

9           MR. SOLOTAROFF:  I can't really even be sure what

10   they're saying here, Judge, and again, it's not their fault --

11          THE COURT:  One thing they're saying, which sounds

12   really right to me is, a manufacturing defect claim is for when

13   the one product that I bought doesn't meet specifications.  And

14   you're arguing here that they're all defective.

15          MR. SOLOTAROFF:  Right.  That's one thing that I could

16   deal with now, but in terms of the negligence claim, in terms

17   of the design defect claim -- and again, I don't think this is

18   their fault.  It's, as Mr. Schwing said, it's, like, in three

19   pages, there's only so much you can do.  And honestly, I don't

20   think it's your Honor's fault.  I understand your Honor doesn't

21   want more than three-page letters on a pre-motion conference.

22          But so, and I don't think -- it's not like the

23   defendants aren't going to be coming up with these arguments at

24   some point, no matter what, even in California.  So, given

25   that, I kind of think it would be best to do them both at the

181009dpC                    Conference

1   same time.

2            THE COURT:  Well --

3            MR. SOLOTAROFF:  But then your Honor would only

4   deal --

5            THE COURT:  What you've just proposed has to do with

6   the 12(b)(6) motion.  You want to do it the way, for example,

7   my colleague next door does it, which is, the defendant makes

8   the motion, then plaintiff amends, then defendant renews the

9   motion if he wants to, but that's a different question on

10  whether the transfer motion should be decided before the

11  12(b)(6) motion.

12           MR. SOLOTAROFF:  I was just thinking that -- and,

13  again, obviously, your Honor, you're the expert on judging and

14  I'm not, but it seems like it would make sense if they make

15  both motions, same time, and then I respond to the motion to

16  transfer, and then I -- in other words, it may work out the

17  same way, because by the time I've gone through a round of

18  amending and if they decide to renew their motion, your Honor

19  may have already decided the motion to transfer because the

20  motion to transfer will essentially be answered first.

21           I just want to give us a little bit of a head start,

22  so that way, we're not starting all over again if the motion to

23  transfer is denied, but, rather, we're kind of halfway there

24  with the motion to dismiss.  So it's my innovative proposal.

25           THE COURT:  So your proposal is, they make both

181009dpC                    Conference

1    motions, you respond to the motion to transfer, and you amend

2    the complaint.  And then they renew the motion to dismiss if I

3    don't transfer?

4              MR. SOLOTAROFF:  Yes.

5              MR. SCHWING:  Your Honor, this just seems very

6    inefficient to take these things -- we make a motion to dismiss

7    and a motion to transfer, but then they may change their

8    complaint.  And if the case gets transferred, by the way, there

9    are federal issues of preemption that we will be dealing with

10   and we may be briefing them under the Second Circuit versus the

11   Ninth Circuit.  It just can lead to a lot of inefficiency.

12             I do believe that the appropriate way to handle

13   this -- we were at the infancy of this case, we're not looking

14   to drag anything out -- to do this in a sort of one-step,

15   two-step process seems to make a lot more sense in terms of

16   efficiency.

17             And to the extent it's going to be transferred,

18   Judge Orrick may want to set a different briefing schedule.

19             THE COURT:  Well, you're both proposing a form of

20   two-step process; not the same one.

21             What I think makes the most sense, why don't you --

22   defendant will make the motion to transfer.  And I'll jump the

23   line with it and try to give you a ruling without too much

24   delay.

25             And then, it's funny, my colleague next door and I

181009dpC                    Conference

1   always talk about this.  He has the defendant make the motion,

2   then the plaintiff gets to amend, then the defendant has to

3   make the motion again.  And I always say, yeah, but then the

4   defendant has to spend all this money making the motion.  He

5   says, yeah, but, you know, it really ends up narrowing the

6   issues, and the plaintiff sometimes backs off certain claims.

7         I always say, yeah, but the same thing happens through

8   my procedure.  And the other way to do it is a little, I don't

9   know, it seems a little burdensome on the defendant without a

10  lot of benefit.

11        Let's do the motion to transfer first.  If I grant it,

12  you'll go in peace.  If I don't, then plaintiff will amend, and

13  then we'll brief the motion to dismiss.

14        You know, as an expert on judging, one thing I've

15  learned is that there's no one right answer to almost every

16  question.  Neither side's proposal is unreasonable, but let's

17  do it the way I've just described.

18        How long, Mr. Schwing, would you like for the motion

19  to transfer?  And I always say, don't be macho.  Tell me what

20  you really want.

21        MR. SCHWING:  I'm not usually accused of being macho.

22  I'm comfortable with that.

23        Maybe three weeks from now, your Honor, which I don't

24  have my --

25        THE COURT:  All right.  That would be the 30th,

181009dpC                     Conference

1   October 30th.

2           MR. SCHWING:  Yes.

3           THE COURT:  And Mr. Solotaroff, how long would you

4   like?

5           MR. SOLOTAROFF:  Three weeks, Judge.

6           THE COURT:  Three weeks?

7           MR. SOLOTAROFF:  Yes.

8           THE COURT:  That would take us to November 20th.

9           And then two weeks for a reply?  Oh, you have

10  Thanksgiving in there.  Tell me what you want for reply without

11  ruining your holidays, or some poor associate's holiday.

12          MR. SCHWING:  Would December 6 work?

13          MR. EVALL:  Your Honor, would there be oral argument

14  on this, and would that be before the end of the year or would

15  that be in January?

16          THE COURT:  I generally find there are few lawyers who

17  can be more helpful to me at oral argument than they can in

18  their papers, so I rarely hear oral argument.

19          If I think it will be helpful in a given case, I'll

20  call you in, but I don't usually find it helpful.

21          MR. EVALL:  In that case, can we have until

22  December 11?

23          THE COURT:  That's fine.

24          And what I will try to do is give you a ruling from

25  the bench sometime in January.  I have a trial the week of the

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

181009dpC                    Conference

1    seventh.  It might go away.

2          The following week or the week after...

3          THE DEPUTY CLERK:  January 15, 2019, at 2:00 p.m.

4          THE COURT:  All right.  If, for some reason, I can't

5    get my act together to give you a ruling, then I'll let you

6    know, but I should be able to.

7          Then, just so you're prepared, what I usually do when

8    I rule from the bench is, I say to the parties, Is there

9    anything you would like to add that's not covered by the

10   papers?  And 99 times out of a 100, they say no because

11   everything has been covered by the papers.  But if there's

12   something that you feel you must share with me, you'll have

13   that opportunity.  And I might have a question or two, but I

14   don't have formal argument.

15         Anything else we should do this afternoon?

16         MR. SOLOTAROFF:  Just one thing, kind of

17   prophylactically.

18         First of all, to be clear, I have nothing to do with

19   anything involving the class cases – deciding to file here,

20   there, state court, federal court, Pennsylvania.  Not involved

21   at all.  But just to fend off any allegations, it is

22   conceivable, Judge, that there may be more cases filed,

23   individual cases, and they may be filed in this court.  And my

24   intention was to write them to your Honor because they're very

25   similar.

181009dpC                    Conference

1          THE COURT:  Lucky me.

2          MR. SOLOTAROFF:  Judge, I think there could be worse

3    cases you could have.

4          THE COURT:  Look, the most interesting cases are also

5    often the biggest pain in the neck, but that's why they pay me

6    the big bucks.

7          MR. SOLOTAROFF:  Sure.

8          Judge, I don't know if you recall, but my last case

9    before you was the notorious Mr. Mishtoc Amad.

10          THE COURT:  Oh, you had Mr. Amad.  That's right.

11          MR. SOLOTAROFF:  Right at the beginning before the

12    craziness started.

13          THE COURT:  That actually ended up --

14          MR. SOLOTAROFF:  I still get the bounces.

15          THE COURT:  It's sad.  It really is.

16          I'm looking at the related-case rule, which I know

17    we've amended.  I want to make sure I'm looking at the Southern

18    District Rule 109, "If the interest of efficiency and justice

19    will be served."  Well, it probably will be related.

20          We all tend to be pretty tough about the related-case

21    rule because judge-shopping is a bad thing, but my guess is

22    that the outcome will be that it's related.

23          How many are we talking about?

24          MR. SOLOTAROFF:  I don't even know, Judge.  As you can

25    imagine, I've been getting a lot of phone calls.  There may not

181009dpC                    Conference

1  be any, but I just didn't want, if I file one next week, for

2  someone to say that I hadn't mentioned it today.  So at the

3  moment, I don't have any other clients in this district who

4  have retained me, but I think that that could change fairly

5  soon.

6          THE COURT:  Well, you know, they are interesting

7  cases.

8          MR. SOLOTAROFF:  Right.

9          THE COURT:  Something new and different, anyway.

10         Anything else?

11         MR. SCHWING:  No.  I think the fact that there may be

12  more, we'll talk about that maybe in our briefing as another

13  reason this case should be transferred, but I won't belabor the

14  point.

15         Appreciate your time.

16         THE COURT:  Well, I never make up my mind -- well, I

17  guess I shouldn't say never.

18         Once in a blue moon, if I know something is definitely

19  not going to fly, I'll dismiss it in a pre-motion conference,

20  but almost invariably, I don't decide anything at a pre-motion

21  conference, and I keep an open mind until I see the briefs.

22  And sometimes after I see the briefs, what I thought at the

23  pre-motion conference is not where I end up.

24         Of course I'll wait and see what's in the papers.  And

25  unless something changes, I'll see you in January.

181009dpC                     Conference

1           MR. EVALL:  Thank you, Judge.

2           MR. SOLOTAROFF:  Thank you, your Honor.

3           THE COURT:  Thank you.

4               - - -

5  Certified to be a true and correct

6  transcript of the stenographic record

7  to the best of my ability.

8  _____

9  U.S. District Court
   Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25